The STATE of Ohio ex rel. GRIEN

v.

The OHIO STATE HIGHWAY PATROL RETIREMENT SYSTEM.

[Cite as *State ex rel. Grien v. Ohio State Hwy. Patrol Retirement Sys.*, 171 Ohio App.3d 406, 2007-Ohio-2332.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 06AP–506.

Decided May 15, 2007.

Dworken & Bernstein Co., L.P.A., and Richard N. Selby II, for relator.

Marc Dann, Attorney General, and Michael D. Allen, Assistant Attorney General, for respondent.

—————

FRENCH, Judge.

{¶ 1} Relator, Michele Grien, filed this original action requesting that this court issue a writ of mandamus ordering respondent, the Ohio State Highway Patrol Retirement System ("OSHPRS"), to vacate its decision that denied relator a disability pension and ordering the board of OSHPRS to grant relator a disability retirement.

{¶ 2} The court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ (attached as appendix A). No party has

objected to the magistrate's findings of fact, and we adopt them as our own. Nevertheless, we reiterate here those facts relevant to our decision.

{¶ 3} Between 1997 and September 2002, relator was involved in four automobile accidents, two of which occurred while on duty as a trooper with the Ohio State Highway Patrol ("OSHP"). As a result of physical injuries that she suffered in these accidents, relator applied to the board of OSHPRS for disability retirement in May 2003; the board denied relator's application in July 2003.

{¶ 4} Relator again applied to the OSHPRS board for disability retirement in October 2003 and included both physical and psychological injuries as the basis for her application; the board denied relator's application in January 2004. In the meantime, however, the Ohio Department of Public Safety ("ODPS") had held a hearing to determine whether relator should be involuntarily separated from her employment. Effective December 13, 2003, relator was separated from her employment as a trooper based on medical evidence that she was unable to perform her duties. Relator thereafter asked the OSHPRS board to reconsider its denial of disability retirement, but the board denied her request.

{¶ 5} In February 2006, the Industrial Commission of Ohio awarded relator temporary total disability compensation retroactive to April 2004, based on medical evidence that relator suffered from post-traumatic stress disorder.

{¶ 6} After being informed that she could not file a new application for disability retirement because she is no longer a member of the OSHPRS, relator filed this original action. In it, relator has asked this court to grant a writ ordering the OSHPRS board to grant her request for disability retirement. As noted, the magistrate recommended denial of the requested writ. Specifically, the magistrate found that the board did not abuse its discretion in denying relator's second application for disability retirement, despite the decision by ODPS that relator was unable to perform her duties.

{¶ 7} Relator filed objections to the magistrate's decision. In them, she argues that the magistrate erred in determining that the board's denial of both her application and request for reconsideration was in accordance with law and was not an abuse of discretion. In her view, once ODPS determined that relator "is incapable of performing the essential duties of her position," the OSHPRS board "should have a corresponding legal duty to provide her with the disability benefits which logically follow from" the ODPS determination.

{¶ 8} In order to be entitled to the requested writ of mandamus, relator had to establish a clear legal right to disability retirement, a corresponding clear legal duty on the part of OSHPRS and its board to award disability retirement, and the absence of a plain and adequate remedy in the ordinary course of law. *State ex rel. Moss v. Ohio State Hwy. Patrol Retirement Sys.*, 97 Ohio St.3d 198, 2002-

Ohio-5806, 777 N.E.2d 259, at ¶ 5. Before the magistrate, OSHPRS conceded that relator had no other remedy to obtain her relief. Thus, we consider relator's rights to disability retirement and the board's corresponding duties.

■ {¶ 9} R.C. Chapter 5505 creates and defines the OSHPRS and provides for mandatory membership in the system for all OSHP employees. See R.C. 5505.02. R.C. 5505.04(A)(1) vests the authority for "[t]he general administration and management of" the OSHPRS in the OSHPRS board. Among its duties is the determination of a member's eligibility for disability retirement. R.C. 5505.18(A) provides:

> Upon the application of a member of the [OSHPRS] * * * a member who becomes totally and permanently incapacitated for duty in the employ of the state highway patrol may be retired by the board.

> The medical or psychological examination of a member who has applied for disability retirement shall be conducted by a competent health-care professional or professionals appointed by the board. The health-care professional or professionals shall file a written report with the board containing the following information:

> (1) Whether the member is totally incapacitated for duty in the employ of the patrol;

> (2) Whether the incapacity is expected to be permanent;

> (3) The cause of the member's incapacity.

> The board shall determine whether the member qualifies for disability retirement and its decision shall be final. The board shall consider the written medical or psychological report, opinions, statements, and other competent evidence in making its determination.

■ {¶ 10} This statutory authorization leaves no doubt that the OSHPRS board holds discretion to determine whether a member is "totally and permanently incapacitated" and, therefore, entitled to disability retirement, based on the medical evidence presented. Here, the medical evidence before the board included reports and evidence from numerous health care professionals, including Claire V. Wolfe, M.D., and Richard H. Clary, M.D., who concluded that relator's injuries did not preclude her eventual return to duty. Thus, the board had some evidence upon which to base its denial of disability retirement, and relator has no clear legal right to a contrary determination.

■ {¶ 11} Nevertheless, relator points to her involuntary disability separation by her employer, ODPS. That separation, relator argues, should entitle her to disability retirement. We disagree.

{¶ 12} The director of ODPS has the power to order terminations of employment, R.C. 5502.011(C)(5), and administrative rules prescribe the applicable procedures and boundaries. Former Ohio Adm.Code 123:1–33–02 (now, effective October 29, 2006, Ohio Adm.Code 123:1–30–01) provided:

(B) When an appointing authority has received the results of a medical or psychological examination and initially determines that an employee is incapable of performing the essential job duties of the employee's assigned position due to a disabling illness, injury, or condition, the appointing authority shall institute pre-separation proceedings. * * *

(C) * * * If the appointing authority determines, after weighing the testimony presented and the evidence admitted at the pre-separation hearing, that the employee is unable to perform his or her essential job duties, then the appointing authority shall issue an involuntary disability separation order.

{¶ 13} Our record contains the involuntary-disability-separation order terminating relator's employment. Presumably, the director of ODPS, as the appointing authority, issued this order following a determination "after weighing the testimony presented and the evidence admitted at the pre-separation hearing," that relator was "unable to perform * * * her essential job duties." See id.

{¶ 14} Nothing in this statutory and regulatory scheme compels entitlement to disability retirement following an involuntary disability separation. In order to grant disability retirement, the OSHPRS board must determine whether a member is "totally and permanently incapacitated." This language reflects a legislative intent "to limit such retirement to persons who are unable to perform their duties. Use of the limiting term 'totally' in R.C. 5505.18(A) ('totally and permanently incapacitated') indicates that the legislature intended that anything less than total incapacity for duty would not qualify an applicant for retirement pursuant to R.C. 5505.18." 1990 Ohio Atty.Gen.Ops. No. 2, at 10.

{¶ 15} In contrast, in order to issue an involuntary-disability-separation order, ODPS must determine whether "the employee is unable to perform his or her essential job duties." Such a determination could arise from a finding that an employee is temporarily unable to perform his or her essential duties, but may be eligible for reinstatement under Ohio Adm.Code 123:1–30–04 upon a full recovery. That outcome appears particularly likely where, as here, there exists medical evidence that an employee's injuries are temporary and do not preclude an eventual return to work.

{¶ 16} In short, ODPS need not determine whether a member's injuries are permanently or totally incapacitating before ordering a disability separation, nor could a disability separation order necessarily be interpreted as such a determination. Thus, in the context of relator's request for mandamus, the ODPS involuntary separation order creates no legal right to disability retirement.

{¶ 17} Moreover, any contrary holding would conflict with the decision of the Ohio Supreme Court in *Fair v. School Emp. Retirement Sys.* (1978), 53 Ohio St.2d 118, 7 O.O.3d 192, 372 N.E.2d 814. In *Fair,* a county board of education disqualified a school bus driver and state employees retirement system ("SERS") member from his job based on a state board of education regulation that precluded persons with diabetes from being school bus drivers. The driver applied to SERS for disability-retirement benefits. SERS found that the driver was not disabled and denied the application. The trial court and this court ruled in favor of the driver.

{¶ 18} On appeal, the Supreme Court reversed. The court held that the driver was not entitled to retirement benefits because the state board's regulation was not controlling on SERS's determination of whether a member was entitled to disability retirement. The court stated:

> To hold that regulations promulgated by the state board pursuant to R.C. 3327.10(A) are binding on the [SERS] would not only lack a statutory base, but also would place the determination of eligibility for disability retirement within the province of an agency having no responsibilities whatsoever for the administration and control of the retirement funds. Such a result clearly does not comport with the scheme created by the General Assembly which established a separate and independent agency to oversee and manage the school employees retirement funds under R.C. Chapter 3309.
>
> The question as to whether appellee Fair should receive a certificate as a school bus driver is subject to those rules and regulations promulgated by the State Board of Education. The question as to whether appellee is entitled to disability retirement is subject to the determination of the retirement board acting under the provisions of R.C. 3309.39. In each instance, the agency involved is required to make an independent decision regarding which diseases or physical impairments constitute disabilities, and to take action accordingly.

Id. at 121, 7 O.O.3d 192, 372 N.E.2d 814. See, also, *State ex rel. Schwaben v. School Emp. Retirement Sys.* (1996), 76 Ohio St.3d 280, 667 N.E.2d 398 (relying on *Fair* to affirm SERS's denial of disability retirement to employee disqualified as school bus driver).

{¶ 19} These same principles apply here: the question whether relator is unable to perform the essential duties of her job is subject to determination by ODPS; the question whether relator is permanently and totally incapacitated for duty and, therefore, entitled to disability retirement, is subject to determination by the OSHPRS board. In each instance, the agency involved must make an independent decision regarding relator's injuries and disabilities and take action accordingly. Thus, the OSHPRS board does not have a legal duty to grant disability retirement to relator, and we overrule relator's objections.

{¶ 20} In summary, based on an independent review of the evidence, we adopt the magistrate's findings of fact and conclusions of law as our own, except that we modify the magistrate's conclusions of law to include the above discussion. Accordingly, we deny the requested writ of mandamus.

Writ denied.

BRYANT and KLATT, JJ., concur.

## APPENDIX A

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

State of Ohio ex rel. Michele Grien, Relator,

v.

The Ohio State Highway Patrol Retirement System, Respondent.

No. 06AP–506

(REGULAR CALENDAR)

MAGISTRATE'S DECISION

Rendered on November 15, 2005

Dworken & Bernstein Co., L.P.A., and Richard N. Selby II, for relator.

Jim Petro, Attorney General, and Daniel P. Jones, Assistant Attorney General, for respondent.

### IN MANDAMUS

{¶ 21} Relator, Michele Grien, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, the Ohio State Highway Patrol Retirement System ("OSHPRS"), to vacate its decision that denied relator a disability pension and ordering OSHPRS to grant her a disability retirement.

*Findings of Fact:*

{¶ 22} 1.   Relator has been involved in four automobile accidents since 1997. The first two accidents occurred when she was off duty, and the second two accidents occurred when she was on duty.

{¶ 23} 2.   Both of relator's on-duty accidents occurred in September 2002, and as a result, relator sustained injuries to her neck, back, shoulder, hips, ribs, and hand.

{¶ 24} 3.   Relator filed her first application for disability retirement in May 2003.   Relator's application was supported by medical documentation related

solely to physical injuries that she had sustained as a result of the September 2002 accidents.

{¶ 25} 4.  On July 24, 2003, OSHPRS's board denied relator's application.

{¶ 26} 5.  In October 2003, relator submitted a second application for disability retirement.  Relator submitted medical documentation related to both the physical injuries she had sustained, as well as certain emotional and psychological problems from which she was suffering as a direct result of the accident. Specifically, Paul J. Pagano, M.D., completed a medical-appraisal-of-job-capacity form wherein he indicated that relator could not return to work without any restrictions;  however, he concluded that she could return to part-time work (up to six hours per day) as of August 11, 2003, provided that she was restricted to sitting, standing, and walking for no more than two hours each.  Furthermore, Dr. Pagano stated that relator could lift or carry up to ten pounds frequently, and up to 20 pounds occasionally, but that she could not lift over 20 pounds.  He indicated that relator could bend, twist/turn, reach below the knee, push/pull, and squat/kneel occasionally and that she could stand, walk, and sit frequently.  Dr. Pagano further noted that the restrictions were permanent.  In a report dated August 11, 2003, Dr. Pagano stated as follows:

> Statistically as a Workers' Compensation patient there is a low probability she will ever return to her current position.  I do feel her restrictions that I gave her today are permanent.

{¶ 27} Relator also submitted medical evidence from Betsy A. DeChant, M.S.W., who has seen relator for her psychological conditions.  In her November 2, 2003 report, Ms. DeChant diagnosed relator as suffering from post-traumatic stress disorder ("PTSD") with depressive features, and opined that it was a direct result of her September 2002 accidents.

{¶ 28} 6.  Relator was referred to Claire V. Wolfe, M.D., for an examination. In her June 10, 2003 report, Dr. Wolfe opined:

> The cervical MRI has been normal, the upper extremity neurologic exam has been normal, and the clinical examination is quite suggestive of myofascial pain syndrome.  The other thing supporting generalized myofascial pain/-fibromyalgia is the history already, at the age of 29, of multiple surgeries for various orthopedic problems, for which there are relatively mild objective abnormalities, as well as the laparascopic surgeries for abdominal pain, the trouble sleeping, and the diagnosis of mitral valve prolapse.

> With respect to the low back, I would point out that Dr. Pagano's notes themselves speak to the fact that most individuals with this mild set of abnormalities usually get better.  The patient has no disc herniation.  She has

no neurologic deficits. She has had shoulder surgery that, by the orthopedist's own opinion, should in 95% or more of the cases completely resolve the problem.

I do not find anything at the time of this examination in this individual that would preclude eventual return to duty as a State Highway Patrol Officer on a physical basis. She should be recovered with her physical therapy to her shoulder and back by September 2003, less than 12 months from onset.

{¶ 29} 7. Relator was referred to Richard H. Clary, M.D., for a psychological evaluation. In his November 10, 2003 report, Dr. Clary opined that relator had an adjustment disorder with mixed features of anxiety and depression and concluded as follows:

Ms. [Grien] has some intermittent anxiety and depression related to her conflict with the highway patrol over her disability claim. She has been released to only work light duty but she said there is no permanent light duty. The last report from Dr. Pagano did not indicate that she was permanently disabled. She is going to have another evaluation by Dr. Claire Wolfe later this month to re-evaluate her back pain to determine whether she has a permanent lower back disability. I did not find evidence for PTSD.

In my medical opinion, Ms. [Grien] has mild symptoms of anxiety and depression but these are not work prohibitive and do not cause long term disability.

{¶ 30} 8. In November 2003, the Ohio Department of Public Safety held a hearing pursuant to Ohio Adm.Code 123:1-33-02(B), to determine whether relator should be involuntarily separated from her employment. Effective December 13, 2003, relator was involuntarily separated from her employment based upon the medical opinion of Dr. Pagano, who indicated that relator was unable to perform her duties as a patrol woman but could perform a sedentary job.

{¶ 31} 9. At its January 22, 2004 meeting, OSHPRS's board voted to disapprove relator's application for disability retirement.

{¶ 32} 10. Relator requested reconsideration, which was denied by the board.

{¶ 33} 11. In February 2006, the Industrial Commission of Ohio awarded relator temporary total disability compensation retroactive to April 19, 2004, based upon the psychological condition of PTSD.

{¶ 34} 12. As of March 2006, relator was informed that she cannot file a new application for disability retirement, as she is no longer a member of OSHPRS.

{¶ 35} 13. Thereafter, relator filed the instant mandamus action in this court. *Conclusions of Law:*

{¶ 36} In this mandamus action, relator essentially makes two arguments. First, relator contends that OSHPRS's board abused its discretion when it denied

her second application for disability retirement. Second, relator points out that the Ohio Department of Public Safety, as her employer, has determined that she cannot return to her work as a State Highway Patrol Officer based upon her treating physician's report while OSHPRS's board has determined, ostensibly based upon the reports of Drs. Wolfe and Clary, that relator is capable of returning to her former duties. Relator contends that it is incongruous for these two entities to examine the same medical evidence and reach two entirely different conclusions.

{¶ 37} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 38} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle* (1983), 6 Ohio St.3d 28, 6 OBR 50, 451 N.E.2d 225.

{¶ 39} R.C. 5505.18 pertains to disability benefits requested from OSHPRS. R.C. 5505.18(A) provides:

Upon the application of a member of the state highway patrol retirement system * * *, a member who becomes totally and permanently incapacitated for duty in the employ of the state highway patrol may be retired by the board. The medical or psychological examination of a member who has applied for disability retirement shall be conducted by a competent health-care professional or professionals appointed by the board. The health-care professional or professionals shall file a written report with the board containing the following information:

(1) Whether the member is totally incapacitated for duty in the employ of the patrol;

(2) Whether the incapacity is expected to be permanent;

(3) The cause of the member's incapacity.

The board shall determine whether the member qualifies for disability retirement and its decision shall be final. The board shall consider the written medical or psychological report, opinions, statements, and other competent evidence in making its determination.

{¶ 40} In her first argument, relator contends that the board did not consider the written medical and psychological evidence that she submitted. Relator cannot prove this argument. Upon review of the record, the magistrate notes that there was some evidence in the record, from Drs. Wolfe and Clary,

indicating that relator was capable of returning to her employment both from a physical standpoint as well as a psychological standpoint. The board was not required to accept the opinion of relator's physicians that she was unable to return to her employment. As long as there is some evidence in the record supporting the board's ultimate decision, this court cannot grant relator's request for a writ of mandamus.

{¶ 41} Her second argument is that the Ohio Department of Public Safety, as her employer, and OSHPRS's board cannot reach two entirely different conclusions as to her ability to work based upon a review of the exact same evidence. Relator argues that these two different findings prove an abuse of discretion.

{¶ 42} While the magistrate can certainly understand relator's frustration, frustration does not mean that relator is entitled to a writ of mandamus to compel the OSHPRS's board to reach the same conclusion that the Ohio Department of Public Safety reached. These are two separate bodies that are not bound to accept the conclusions reached by the other. Furthermore, the board is likewise not required to accept the determination from the Industrial Commission of Ohio, which found that relator was entitled to temporary total disability compensation based upon the psychological condition of PTSD. While the outcome certainly appears unfair, there simply is no relief in mandamus to which relator is entitled to compel the OSHPRS's board to grant her a disability retirement.

{¶ 43} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that OSHPRS abused its discretion in denying her disability retirement application, and relator's request for a writ of mandamus should be denied.